IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LISA K. S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-1331-CJP[2] |
| | ) | |
| COMMISSIONER of SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for disability benefits on April 17, 2014. After holding an evidentiary hearing, Administrative Law Judge (ALJ) Kellie Wingate Campbell denied the application on August 16, 2017. (Tr. 19-29). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 8.

complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ did not adhere to 20 C.F.R. § 416.927 when she failed to accord adequate weight to the opinion of the claimant's physician.

2. The ALJ did not adhere to SSR 16-3p when she failed properly assess claimant's subjective allegations, including her daily activities.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals

has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at

step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Campbell followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date.

The ALJ found that plaintiff had severe impairments of chronic obstructive pulmonary disease (COPD), emphysema, mild restrictive lung disease, degenerative joint disease of the left shoulder with atrophy, Barrett's esophagus, and obesity.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the medium exertional level with some physical and mental limitations. Based on the testimony of a VE, the ALJ concluded that plaintiff was not able to do her past work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

### 1. Agency Forms

Plaintiff was born in 1958 and was almost 56 years old on the alleged onset date. Her reported height was 5'6" and her reported weight was 171 pounds. (Tr. 61). She previously worked as a store worker, department manager, and a cashier. (Tr. 69). Plaintiff submitted a function report in July 2014 stating that

she had a hard time doing household chores and activities of daily living, such as blow drying her hair, getting the mail, and picking up her purse. (Tr. 205, 212). She reported getting winded easily, had trouble lifting a gallon of milk, and could only climb 5 to 6 stairs. (Tr. 206, 208, 210). She did acknowledge driving, shopping for groceries, preparing simple meals, and doing light cleaning in 5 to 10 minute intervals. (Tr. 207-208). She also stated she fished 3 to 4 times in the spring and fall, but that changed because it was hard to breathe in the summer and she could not sit down very long. (Tr. 208).

2. **Evidentiary Hearing**

At the evidentiary hearing, plaintiff reported that she was married and was insured through her husband. (Tr. 44, 53). She was prescribed metformin, Januvia, omeprazole, Paxil, buspirone, mirtazapine, Spiriva, ProAir, and Norco. (Tr. 60). Plaintiff said she could not work a less strenuous job. (Tr. 44). Plaintiff stated she could not lift a gallon of milk with her left and right arm because it caused pain in her shoulders. (Tr. 44-45). She also reported that her back hurt all the time and she had back spasms. (Tr. 45). Plaintiff further claimed that she went to physical therapy, but that, excluding the cortisone shots she received, it did not help. (Tr. 43, 46). She additionally said that she could not stand for more than a few minutes without needing to change positions and she could walk no more than the length of a block. (Tr. 46).

A VE also testified. As there is no issue as to her testimony, it will not be summarized.

### 3. Medical Records

In 2013, 2014, and 2015, plaintiff saw Dr. Paul Reger, her primary care physician. In 2013, Dr. Reger diagnosed her with pain in the thoracic spine, COPD, and panic disorder. He also noted that she complained of shortness of breath and he referred her to a chronic pain specialist. (Tr. 384-385, 388-391). In 2014, Dr. Reger noted that plaintiff had major depression and mid-back pain. Plaintiff claimed she had anger issues, crying spells and thought she was losing her mind. She also lamented that her back pain limited her ability to work. (Tr. 499-500). In 2015, Dr. Reger observed that plaintiff had anxiety, acute bronchitis, mid-back pain, limited range of motion, and rotator cuff syndrome, for which he prescribed meloxicam. (Tr. 550, 553-558). Additionally, Dr. Reger reported that plaintiff's MRI revealed moderate tendinosis of the supraspinatus tendon, mild degenerative change with subchondral cyst formation at the greater tuberosity, and moderate proximal biceps tendon tenosynovitis. (Tr. 550, 596-597). He opined that plaintiff would not be able to continue meaningful employment. (Tr. 481, 496).

Dr. Reger completed a form in 2015 to assess plaintiff's ability to do work-related activities. He diagnosed plaintiff with COPD, depression, and back pain. Dr. Reger stated the plaintiff would be unable to sit, stand, and walk a combined maximum of 4 hours in an eight-hour workday. He stated she would rarely be able to lift or carry less than 10 pounds, twist, stoop, bend, crouch, climb stairs, and reach; and never climb ladders. He stated plaintiff would be off-task

more than 10% and less than 20% of the time and would require redirection one to two times per day. He stated she had marked limitation in dealing with work stress. He estimated she would be absent from work more than three times per month. (Tr. 477-478).

Dr. Reger also referred plaintiff to Dr. Jeffrey Chalfant, a psychiatrist. (Tr. 554, 584). Plaintiff saw Dr. Chalfant once in 2015, and several times in 2016. (Tr. 584, 643, 652, 655, 658). He diagnosed plaintiff with recurrent moderate major depressive disorder and anxiety disorder. (Tr. 660). Throughout his notes, plaintiff's psychological state appeared to be fluid, with plaintiff exhibiting waves of anxiety and anger. Dr. Chalfant also modified plaintiff's medications throughout her visits. (Tr. 584, 643, 652, 655, 658).

In November 2014, acting as a state agency consultant, Dr. B. Rock Oh, assessed plaintiff's RFC based on a review of the file contents. Dr. Oh found that the plaintiff was not disabled and could perform light work. (Tr. 70, 72). He stated she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He also stated she had unlimited ability to balance, stoop, kneel, crouch, and crawl. (Tr. 67-68). In April 2015, acting as a state agency consultant, Dr. LaVerne Barnes, D.O., also assessed plaintiff's RFC based on a review of the file contents and agreed with Dr. Oh's assessment. Dr. Barnes found that plaintiff was not disabled and could perform light work. (Tr. 85-86).

## Analysis

Plaintiff argues that the ALJ did not adequately explain his rejection of

plaintiff's treating physician's opinion in his written decision. A treating physician's opinion is entitled to "controlling weight" if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who chooses to reject a treating physician's opinion must provide a good reason for the rejection. *Ibid.*

When an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ must provide an account of what weight the treating physician's opinion merits. 20 C.F.R. § 404.1527(c)(2)-(5); *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). Specifically, the ALJ must evaluate the opinion in light of (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. *Ibid.* The ALJ's decision failed to meet these requirements for rejecting the opinion of plaintiff's treating physician.

The deficiency here is that the ALJ's reasoning for rejecting Dr. Reger's opinion is lacking at best. His opinion, as reflected in notes and the questionnaire he completed in February 2015, sheds light on the plaintiff's symptoms and her residual functional capacity and thus was relevant to several parts of the ALJ's

analysis. Along with providing diagnoses and symptoms, Dr. Reger found moderate problems in plaintiff's diagnostic imaging results and stated plaintiff would not be able to continue meaningful employment. He also observed that plaintiff had marked limitations in dealing with work stress. Additionally, in his RFC assessment, Dr. Reger opined that she would be unable to sit, stand, and walk a combined maximum of 4 hours in an eight-hour workday. He found she would rarely be able to lift or carry less than 10 pounds, twist, stoop, bend, crouch, climb stairs, and reach; and never climb ladders. He stated plaintiff would be off-task more than 10% and less than 20% of the time and would require redirection one to two times per day.

In response, the ALJ dismissed his opinion with a conclusory statement, saying that Dr. Reger's opinion on the RFC was "not supported by his own treatment notes, which record only minor findings, such as back pain, with normal reflexes, coordination, strength, and range of motion, as well as only minor diagnostic imaging findings. Additionally, his opinion appears to be based on the claimant's subjective complaints." (Tr. 22-23). That's it. Even more damaging was the ALJ's complete failure to consider Dr. Reger's opinion that plaintiff would not be able to work, or even deal with work stress, and her mischaracterization of plaintiff's diagnostic imaging results as "minor" when Dr. Reger discovered moderate tendinosis of the supraspinatus tendon and moderate proximal biceps tendon tenosynovitis.

Plaintiff's second argument also holds water. The ALJ concluded that the

objective medical evidence indicated that plaintiff's impairments could reasonably be expected to cause her alleged symptoms. Nevertheless, using language the Seventh Circuit has called "even worse" than "meaningless boilerplate," the ALJ concluded that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." See *Bjornson v. Astrue,* 671 F.3d 640, 645–46 (7th Cir. 2012); see also *Brindisi v. Barnhart,* 315 F.3d 783, 787–88 (7th Cir. 2003). Although the use of this language alone does not warrant remand, remand is appropriate here because the ALJ improperly equated plaintiff's limited daily activities with an ability to work full time.

The ALJ cited to SSR 16-3p, which supersedes the previous SSR on assessing a claimant's credibility. SSR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." 2016 WL 1119029, at *1. Under SSR 16-3p, the ALJ must carefully consider the entire case record and evaluate the "intensity and persistence of an individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029 at *2. SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529, including a claimant's daily activities.

However, the Seventh Circuit has cautioned against equating the ability to

engage in limited daily activities with an ability to work. *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has called improper consideration of daily activities "a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore*, 743 F.3d at 1126. The ALJ here overstated plaintiff's ability to do things and overstated the significance of her activities; the ability to grocery shop twice a month, lightly clean her house in 5 to 10 minute intervals, and prepare simple meals is not indicative of an ability to sustain full-time work. See, *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016); see also, *Alaura v. Colvin*, 797 F.3d 503, 506 (7th Cir. 2015). Plaintiff's ability to go fishing "multiple times per year" was misstated by the ALJ as well. (Tr. 25). Plaintiff listed fishing as a hobby, but then stated that her ability to fish was severely limited by her symptoms. (Tr. 209). Time and time again, the ALJ here exaggerated plaintiff's activities in order to fit her narrative that plaintiff was not disabled and could work at a medium exertion level.

The erroneous credibility determination requires remand. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). Reconsideration of plaintiff's credibility will also require a "fresh look" at plaintiff's RFC. *Ibid.*

Additionally, it is worth noting that plaintiff was 59 years old on the date of the ALJ's decision. If she can do a full range of light work, as the state medical consultants contended, but cannot do her past relevant work, the Grids dictate that she is disabled unless she has transferrable skills. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(g); Rules 201.12–201.16.[3] The VE identified some unskilled jobs that plaintiff could do, but stated that she did not have transferrable skills when limiting her abilities to light work. So, if she is unable to do her past work, she may well be entitled to DIB.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## **Conclusion**

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

---

[3] The Grids (20 C.F.R. Part 404, Subpart P, Appendix 2) are appropriate where the claimant has no nonexertional limitations and has the RFC to do a full range of work at a specified exertional level. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e). See also, *Haynes v. Barnhart*, 416 F.3d 621, 628–629 (7th Cir. 2005).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   March 8, 2019.**

<u>**s/ Clifford J. Proud**</u>  
**CLIFFORD J. PROUD**  
**UNITED STATES MAGISTRATE JUDGE**